STATE v. THE CITY OF JACKSONVILLE.

179 So. 172.
Division A.
Opinion Filed February 15, 1938.

*William A. Hallowes, III,* and *James H. Bunch,* for Appellant;

*Austin Miller* and *Eli Finkelstein,* for Appellee.

BROWN, J.—This is an appeal from a final decree of the Circuit Court for Duval County, validating a second issue of revenue certificates by the City of Jacksonville,

secured by the revenues of the City's electric light plant. The ordinance authorizing this second issue of revenue certificates, amounting to $1,000,000, provided that they should be of equal dignity with the first issue, both issues being payable solely out of the revenues of the plant to be improved. The court in its decree of validation held that this second issue of revenue certificates was for the future improvement of the same project for which the first issue was authorized, and that the revenues of the electric plant were more than sufficient to retire both issues.

The petition for validation was filed December 1, 1937, and the proceedings were regular in form. On December 21, 1937, the State, through its State Attorney, William A. Hallowes, III, filed its answer questioning the right of the petitioner to have said certificates validated upon several grounds. The only ground of objection thus interposed which is insisted upon and argued on this appeal is that the ordinance authorizing the present issue makes the second issue of equal dignity with the first and thereby impairs the obligation of the contract evidenced by the first issue of revenue certificates in contravention of the contract clause of both the State and Federal Constitutions.

All questions raised in the court below except the one question above posited have heretofore been definitely adjudicated by this court in the case of Brooks v. City of Jacksonville, 127 Fla. 564, 173 So. 365, wherein the validity of the first, and only outstanding issue of revenue certificates of the petitioner, was adjudicated.

In support of their respective contentions, the appellant cites, State v. Milam, 113 Fla. 491, 153 So. 100; State v. Boring, 121 Fla. 781, 164 So. 859; Bardsley v. Sternberg, 18 Wash. 612, 52 Pac. 251; La France Fire Engine Company v. Davis, 9 Wash. 600, 38 Pac. 154; 44 C. J. 1174;

State v. Harris, 119 Fla. 375, 161 So. 374; and the Appellee, City of Jacksonville, cites Boatright v. City of Jacksonville, 117 Fla. 477, 158 So. 42; Brockenbrough v. Board of Water Com'rs, etc. (N. C.) 46 S. E. 28; Brooks v. City of Jacksonville, 127 Fla. 564, 173 So. 365; Howe v. Long Prairie Levee, (Ark.) 62 S. W. (Ed.) 10; Krietmeyer v. Hemphill, (Fla.) 19 Fed. (Ed.) 513; Sovereign Camp v. Lake Worth Inlet District, 119 Fla. 782, 161 So. 717, 99 A. L. R. 1482.

It appears from the petition that the only outstanding obligation of the petitioner secured solely by the net or gross revenues of the said electric light plant is the $1,250,000 of electric revenue certificates issued May 1, 1937, and maturing serially in the amount of $100,000 per year on May 1st of each year from 1938 to 1948 inclusive, $150,000, maturing in 1949. It further appears that the net revenue of the petitioner from its municipal electric plant amounted to $1,715,543 for the year 1934, $1,756,785 for the year 1935, and $1,980,197.99 for the year 1936. This petition was filed during the year 1937. It is stated in the recently filed brief for appellee, and not denied, that the net revenue of said plant for the year 1937 amounted to $2,153,551.29. The petition further alleged that the net revenues of the petitioner for said electric plant are greatly in excess of the total bond maturities, both principal and interest, becoming due throughout any year in which maturities shall accrue on said electric certificates, including the maturities of the second of revenue certificates which the court was recently asked to validate. The ordinance authorizing the second issue of revenue certificates provided that the aggregate principal sum of the same shall amount to $1,000,000; that the certificates shall be dated April 1, 1938, in the denomination of $1,000 each, that

they shall bear interest at a rate not to exceed 6 per cent per annum to be definitely fixed by the City Commission, approved by the Mayor and concurred in by the City Council of said City; such interest payable semiannually; and that said certificate shall mature serially in numerical order, $100,000 per year for a period of ten years, that is, on April first of each year from and including the year 1939 to and including the year 1948.

In the decree of validation the court below among other things, had this to say:

"And it further appearing to the Court that the electric revenue certificates herein sought to be validated are to be used for the purpose of raising funds necessary in order to finance the cost of construction of extensions and improvements to the municipal electric plant of petitioner, such extensions and improvements to consist of installation of two additional cables between the Main Generating Station and Laura Street Sub-Station, and from Laura Street Sub-Station to Main Street Sub-Station, with switchboards, reactors, switching equipment and other extensions and additions to the underground distribution and overhead transmission systems, necessary to provide operating conditions which will safely guarantee continued service in accordance with the increasing demand on said municipal electric plant and distribution system so as to increase the appliances for the manufacture and distribution of electricity, and necessary for the continued operation of the said electric plant, and that the issuance of said electric revenue certificates and the improvements financed by the sale thereof will save, preserve and secure said electric plant for the benefit of petitioner, and its citizens and any and all persons financially interested therein by ownership of bonds or electric revenue certificates, secured by the

income thereof or otherwise, and that all of said bonds heretofore issued by petitioner are not only secured by the net revenues of the electric plant of petitioner but also of the Municipal Docks and Terminals, the Municipal Waterworks, and the full taxing power of the petitioner; that therefore the pledge of the income of the said electric plant to secure the payment of the electric revenue certificates hereby sought to be validated is a superior and paramount pledge and a paramount lien to all other pledges of or liens upon said revenues of said electric plant, except electric revenue certificates heretofore issued by petitioner in the sum of $1,250,000.00 for the same project, secured by and chargeable to said revenues as an operating expense, as to which certificates those hereby sought to be validated are of equal dignity.

"And it further appearing to the Court that the estimated revenues of petitioner's several utilities, its Municipal Electric Light Plant, Municipal Docks and Terminals and Municipal Waterworks, based upon past performances, are ample to retire not only the outstanding bonded debt of the petitioner and said electric revenue certificates in the sum of $1,250,000.00 heretofore issued, both principal and interest, maturing during the years 1939 to 1948, both inclusive, together with the certificates hereby sought to be validated, without pledging the rate-making power to be exercised in the future. Especially is this true in view of the fact that the entire taxing power of the petitioner is also pledged to secure its present bonded debt, which taxing power is unlimited.

"And it further appearing to the Court that all other objections to the validation of the certificates hereby sought to be validated, raised by the said answer of the respondent, have been heretofore determined against the respondent

by the Supreme Court of Florida in the case of T. L. Brooks v. City of Jacksonville, 173 Southern 365, 127 Florida, 564.

"Now, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the motion of petitioner, the City of Jacksonville, to strike the said answer of the Respondent, be and the same is hereby granted, exception being noted for the Respondent."

It will thus be seen that the Circuit Court found that the first issue of revenue certificates were issued to raise funds for the same project as that for which the second issue of certificates was authorized. In the case of Brooks v. City of Jacksonville, *supra,* this Court, speaking through the late Mr. Justice DAVIS, said:

"The obligation of the proposed revenue certificates is against the City of Jacksonville in its public corporate capacity as proprietor of an existing municipal electric generating and distribution system that the city is authorized, and indeed required, by law to keep and maintain in a reasonably high state of productive efficiency for the utility and benefit of the city's inhabitants, and for the accommodation of those of its customers with whom it has authority to deal in a business way."

It will be noted from a reading of that case that the first issue of revenue certificates did not constitute an exclusive pledge of the revenues of said electric plant nor did the ordinance authorizing same attempt to limit such pledges in the future.

As the record shows that the revenues of the city electric plant are more than ample to pay the interest and principal of both issues of revenue certificates as they mature, it has not been made to appear that the issuance and sale of the second issue of revenue certificates, here involved, would

impair the obligation of the contract evidenced by the first issue of certificates, nor even that it *might* do so. The city agrees to maintain the municipal plant in good condition and operate the same in an efficient manner and at a reasonable cost; that the city will fix and maintain rates and collect charges which will provide revenue to pay all charges, including the retirement of these certificates, and that the city will not sell, mortgage or lease the plant and that it will maintain insurance on the plant. Indeed, it might be said that the city's agreement to maintain the plant in good condition, contained in the ordinance under which the first revenue certificates were issued, gave notice to the purchasers that further financing might become necessary to keep up the efficiency of the plant. The first certificate holders may even have a right to expect and demand that such procedure be followed if and when necessary, as the maintenance of the efficiency of the plant is essential to the continued production of the revenue necessary to protect the holders of the first certificates. If it had been made to appear by the respondent State Attorney in the court below that this second issue of certificates was not necessary for the completion of the project for which the first certificates were issued, and merely constituted an unnecessary and unjustified burden upon revenues which had already been pledged for the payment of such first issue and which would endanger their payment, an entirely different question would be presented; but no such showing was made, nor attempted to be made. On the other hand, upon the showing made by the petitioner it cannot reasonably be contended that the holders of the first issue of certificates will suffer by declaring the second issue equal in dignity.

We are here dealing with revenue certificates, both issues

of which are payable out of the same fund; that is, the revenues of the same plant. We are not dealing with ordinary bond issues; but the authorities appear to hold that where several issues of bonds are sold to further the same project, and the project as a whole is dependent upon the construction, replacement or repairs to be made from the proceeds of the bonds, and the bonds in turn are dependent upon the operation and revenue producing capacity of the project thus constructed and maintained, the several issues of bonds, although authorized by different Acts and issued in different years, are deemed to be on a parity, unless some one or more of the early issues had been expressly given some exclusive pledge or security which would prevent such parity.

When the facts of the present case are considered in the light of the facts set forth in our opinion and decision in the former case of Brooks v. The City of Jacksonville, *supra,* we are satisfied that the decree appealed from in this case was well considered and justified by the facts and proceedings as presented to the Circuit Court, and that such decree should in all respects be accordingly affirmed.

Affirmed.

WHITFIELD, P. J., and CHAPMAN, J. J., concur.

TERRELL and BUFORD, J. J., concur in the opinion and judgment.

ELLIS, C. J., not participating.