**STATE OF FLORIDA v. CITY OF JACKSONVILLE and WILL O. MURRELL.**

31 So. (2nd) 385                                    June Term, 1947
July 22, 1947                                            Division A

*William A. Hallowes, III,* for appellant.
*William M. Madison,* for appellee.

TERRELL, J.:

The City of Jacksonville owns and operates its electric plant and distribution system, hereinafter referred to as its municipal electric system. It became necessary to construct improvements, replacements and extensions to its municipal electric system to meet the expanding necessities of the City. Pursuant to this demand the City enacted Ordinance AA-357, authorizing these improvements, replacements and extensions, and providing for the issuance of $15,-000,000.00 in revenue certificates payable solely from the revenues derived from the operation of the municipal electric system to finance the cost of said improvements. At an election called for that purpose as required by Chapter 21318, Acts of 1941, the qualified electors of the City approved the issuance of said certificates by a vote of approximately four to one.

The record discloses that for the past five years, the average annual net revenue of the Municipal Electric System after paying operating expenses, including principal and interest on outstanding certificates of like kind, is $3,074,186.74, and that an average of $318,656.23 in additional net revenues has been used in a depreciation and reserve account, that said amount is greatly in excess of the amounts necessary to retire principal, interest and maturities of the proposed Electric Revenue Certificates. It is further shown that the foregoing amounts will be supplemented annually by net revenues received from the City's Water works and Municipal Docks so as to aggregate $3,340,551.08 and $327,856.21 respectively, which sums are far in excess of that required to pay the principal and interest of all outstanding bonds and electric revenue certifi-

cates, including the proposed issue of electric revenue certificates.

A petition to validate the $15,000,000.00 in electric revenue certificates was filed, order to show cause was issued, service and publication of the order was duly made, answer was filed and an intervening taxpayer filed objections to the validation. A motion to strike the answer and the objections of taxpayer was granted and a final decree validating the certificates was issued. This appeal is from the decree of validation.

It is first contended that the proposed issue of electric revenue certificates are bonds within the contemplation of Section 6, Article IX of the Constitution and can be issued only after an approving vote of the freeholders.

We find no merit to this contention. The chancellor found that these certificates do not come within the purview of Section 6, Article IX of the Constitution of Florida, that they were not bonds or general obligations of the City of Jacksonville, but that they were certificates of indebtedness secured solely by the net revenues of the City's municipal electric system and that no tax could be levied against the City or any property in the City to support them.

The record supports this finding. The electric revenue certificates are not a lien on any property of the City, their form is prescribed by Section 6 of Ordinance AA-357, which provides in terms that they are payable solely from a pledge of the net revenues derived from the operation of the electric system, that they are not an indebtedness of the City within any constitutional, statutory or charter limitation, and the holder expressly agrees when he takes them that he has no right to compel the exercising of the taxing power of the City for their payment. Section 9 of the Ordinance carries similar provisions with reference to the coupons attached to the certificates. So there is no support whatever for this contention. See Brooks v. City of Jacksonville, 127 Fla. 564, wherein this Court affirmed the validation of electric revenue certificates similar to the ones in question.

Appellant further contends that the credit of the City is obligated for the support of these certificates by other provisions of the resolution and Ordinance AA-357, such as the

pledge of the rate making powers of the City, the agreement to pay the same price for electricity as it charges other customers, together with the covenant as to remedies available to the holder of the certificate in the event of default in payment. In our judgment these provisions in no way involve the taxing power of the City, so the contention is without support. State v. MacConnell, 125 Fla. 130, 169 So. 628; State v. City of Fort Pierce, 126 Fla. 184, 170 So. 742; State v. City of Punta Gorda, 124 Fla. 512, 168 So. 835; State v. City of Miami, 146 Fla. 266, 200 So. 535.

The intervener's objections to the validation of the certificates have been considered but they are in part concluded by what we have previously said or they have to do with matters that are discretionary with the City officials and there is no showing that such discretion has been abused. The following cases conclude the latter contention. State v. City of Miami, 113 Fla. 280, 152 So. 6; State v. City of Daytona Beach, 118 Fla. 29, 158 So. 300; State v. City of St. Petersburg, 145 Fla. 206, 198 So. 837.

Appellant states its second question in terms as follows:

"Is the pledge of revenues of the municipal electric system to secure the payment of the electric revenue certificates proposed to be issued by the city of Jacksonville a superior and paramount pledge and a paramount lien to the pledges and liens upon the net revenues of the municipal electric system contained in refunding and original general obligation bonds theretofore issued by the City of Jacksonville and now outstanding?"

The lower court answered this question in the affirmative and supported its ruling by Brooks v. City of Jacksonville, 127 Fla. 564, 173 So. 365 and State v. City of Jacksonville, 131 Fla. 163, 179 So. 172. In the Brooks case the court was confronted with a question parallel to and in all material respects similar to question two as quoted. It was clearly set forth in the Brooks case that the bond and refunding bond provisions did not constitute exclusive pledges nor limit said pledges in the future to the net revenues of the municipal electric system, but that when issued the proposed electric revenue certificates would be a superior and paramount pledge and lien to the

pledges or liens upon the net revenues contained in said bonds and refunding bonds. We are therefore convinced that the chancellor's finding of law and fact was correct and that the second question was concluded by the Brooks case.

Appellant's third and concluding question is stated as follows:

"Are the electric revenue certificates proposed to be issued by the City of Jacksonville of equal dignity and priority with electric revenue certificates heretofore issued by the City of Jacksonville and now outstanding?"

Both the second and third questions challenge the correctness of the final decree relative to priorities of the proposed issue of electric revenue certificates. In answer to this question the lower court held in substance that the proposed electric revenue certificates were a valid and binding obligation against the revenues of the municipal electric system of the City of Jacksonville, superior and paramount to all other pledges of or liens upon said net revenues of said municipal electric system except electric revenue certificates heretofore issued by petitioner and now outstanding in the amount of $825,000.00, as to which certificates those hereby sought to be validated are of equal dignity.

This holding was amply supported by our opinion in State v. City of Jacksonville, 131 Fla. 163, 179 So. 172. The record discloses without question that the revenues of the municipal electric system are more than ample to service the proposed electric revenue certificates and all other outstanding obligations as they mature. There is no showing whatever that the sale of the proposed revenue certificates would in the least impair the obligation of that contract or any other contract of the city depending on the same source.

For these and other reasons too obvious to discuss, the decree appealed from is in all respects affirmed.

Affirmed.

THOMAS, C. J., CHAPMAN, J., and PARKS, Associate Justice, concur.