QUESTIONS:
1. May a municipality expend municipal funds to purchase newspaper advertisements in support of, or in opposition to, the repeal of a county utilities tax which affects and involves the interests of the municipality and its citizens?
2. Must a municipality which purchases a newspaper advertisement in support of, or in opposition to, an issue to be voted on in an election register as a political committee?
3. May a political action organization purchase a newspaper advertisement in support of, or in opposition to, an issue to be voted on in an election without registering as a political committee?
4. May an organization which has been certified as a committee of continuous existence purchase a newspaper advertisement in support of, or in opposition to, an issue to be voted on in an election without registering as a political committee?
SUMMARY:
A municipality may expend municipal funds to purchase newspaper advertisements in support of, or in opposition to, the repeal of a county utilities tax which affects and involves the interests of the municipality and its citizens.
A municipal corporation is neither a "person" nor a "corporation" nor a "political committee" within the purview of Ch. 73-128, Laws of Florida.
A political action organization which does not receive contributions or make expenditures in excess of five hundred dollars during a calendar year and does not anticipate such contributions or expenditures may purchase a newspaper advertisement in support of or in opposition to an issue without registering as a political committee, but must file the statement required by s. 104.373, F.S., and such advertisement must contain the information specified by s. 104.37(5), F.S.
An organization which has been certified by the Department of State as a committee of continuous existence must register as a political committee if it makes any expenditure in support of or in opposition to an "issue" (a proposition required by the State Constitution, the Florida Statutes or other general law, a special act of the legislature, or a charter of any political subdivision of this state to be submitted to the electors for their approval or rejection at an election).
AS TO QUESTION 1:
No decision of a court of this state on this question has been found. However, courts of other states have ruled in favor of the expenditure of municipal funds for similar purposes. In City Affairs Committee v. Board of Commissioners, 46 A.2d 425 (N.J. 1946), the court noted that "the power to take reasonable measures to conserve their own vital interests is incidental to the general powers of local government conferred upon the municipalities" and held that
". . . a municipality may lawfully publicize, at public expense, what its governing body conceives to be sound reasons, relating to the essential local welfare, for the rejection by the people of the state of proposed amendments to the Constitution."
Accord: Hayes v. City of Kalamazoo (Michigan Municipal League, Intervenor), 25 N.W.2d 787, 795 (Mich. 1947), holding that the legislative activities of the Michigan Municipal League were proper and that the sum contributed annually by the city to the league was for a municipal purpose. The court said:
"Obviously, private corporations engaged in the operation of public utilities of the character in question may present their view to the members of the legislature, submitting facts and arguments legitimately tending to aid a proper determination of such questions on their merits. Such being the case, cities and villages should not be denied similar privileges. This necessarily implies the right to compensate from public funds for services rendered and expenses incurred on behalf of such municipalities in activities of the character in question."
Under Art. VIII, s. 2(b), State Const., the municipalities of this state are authorized to "exercise any power for municipal purposes except as otherwise provided by law."
Section 166.021(1), F.S., as enacted by Ch. 73-129, Laws of Florida, provides that municipalities may exercise any power for municipal purposes "except when expressly prohibited by law." I know of no law prohibiting municipalities from budgeting municipal funds for the purpose here in question. The question of what is a public municipal function is ultimately for judicial determination, although due weight will be given to the legislative determination. West v. Town of Lake Placid,120 So. 361 (Fla. 1929); Miller v. City of St. Augustine, 97 So.2d 256
(Fla. 1957). In City of Glendale v. White, 195 P.2d 435 (Ariz. 1948), in holding that the payment of membership dues in a municipal league was a municipal purpose, the court said that
"No hard and fast rule can be laid down, for in determining whether a proposed expenditure of public funds is valid as devoted to a "public use or purpose" each case must be decided with reference to the object sought to be accomplished and to the degree and manner in which that object affects the public welfare."
See also State ex rel. Harper v. McDavid, 200 So. 100 (Fla. 1941), in which it was said that
"The time was when a municipal purpose was restricted to police protection or such enterprises as were strictly governmental but that concept has been very much expanded and a municipal purpose may now comprehend all activities essential to the health, morals, protection, and welfare of the municipality. . . ."
In light of what appears to be the weight of authority in this country, I have the view that, unless and until this question should be legislatively or judicially clarified, question 1 should be answered in the affirmative.
AS TO QUESTION 2:
Nothing in the new election law, Ch. 73-128, Laws of Florida (parts of which are found in Ch. 106, F.S.), is made specifically applicable to a municipality which engages in any political activity regulated by those provisions. Particularly, a municipality is not included in the definition of "political committee" in s. 106.011(2), nor of "person" in s. 106.011(7). Cf. definition of "person" in s. 1.01(3), F.S., which is substantially and essentially the same as s. 106.011(7). Further, in State v. Peninsular Telephone Co., 75 So. 201 (Fla. 1917), the Supreme Court of Florida held that a city was not a "person or corporation" within the meaning and intent of a statute. Also see City of St. Petersburg v. Charter, 39 So.2d 804 (Fla. 1949). This is in accord with the general rule, as noted in AGO 071-75, that:
"Ordinarily, the state and its agencies are not to be considered as within the purview of a statute unless intention to include them is clearly manifest, as where they are expressly named therein, or included by necessary implication. See 82 C.J.S., Statutes, s. 317, p. 554."
Accordingly, I am of the view that unless and until this question should be legislatively or judicially clarified, question 2 should be answered in the negative.
AS TO QUESTION 3:
Section 106.011(2), supra, states, in pertinent part, that the term "political committee"
". . . means a combination of two or more individuals, or a person other than an individual, the primary or incidental purpose of which is to support or oppose any candidate, issue, or political party or principle and which accepts contributions or makes expenditures during a calendar year in an aggregate amount in excess of five hundred dollars. Organizations which are determined by the department of state to be committees of continuing existence . . . shall not be considered political committees for the purposes of this chapter." (Emphasis supplied.)
Accordingly, the mere act of purchasing a newspaper advertisement in support of or in opposition to an issue does not in and of itself bring an organization within the definition of the term political committee. So long as such an organization does not expect to, and does not in fact, receive contributions or make expenditures in excess of five hundred dollars during a calendar year, it is not required to register as a political committee, notwithstanding the fact that it may have engaged in political activity. However, pursuant to s. 106.03, supra, if such an organization "anticipates" receiving contributions or making expenditures in excess of five hundred dollars in a calendar year, it must register as a political committee either within ten days of the date of its organization or within ten days of the date on which it has information which causes it to anticipate such contributions or expenditures.
Although an organization may, under the circumstances discussed above, purchase a newspaper advertisement in support of or in opposition to an issue without having to register as a political committee, it should be noted that such an organization would be subject to the provisions of s. 104.373, F.S., which require the filing of a statement prior to publication of such an advertisement; and to the provisions of s. 104.37(5), F.S., which require all political advertisements or endorsements sponsored by "any group, club, association, or other organization except organizations affiliated with political parties regulated by Chapter 103" to contain certain information, as specified in said s. 104.37(5).
AS TO QUESTION 4:
Section 106.04(5), F.S., specifically provides, within respect to committees of continuous existence, that:
"No such committee shall make expenditures in support of, or in opposition to, an issue unless such committee first registers as a political committee pursuant to this chapter and undertakes all the practices and procedures required thereof." (Emphasis supplied.)
The term "issue" is defined by s. 106.011(6), supra, to mean
". . . any proposition which is required by the state constitution, a general or special act of the legislature, or the charter of any political subdivision of this state to be submitted to the electors for their approval or rejection at an election."
Accordingly, question 4 is answered in the negative.