Mr. Clayton J. M. Adkinson City Attorney City of DeFuniak Springs Post Office Drawer 608 DeFuniak Springs, Florida 32433
Dear Mr. Adkinson:
This is in response to your request for an opinion on substantially the following question:
 CAN THE CITY OF DEFUNIAK SPRINGS, FLORIDA, PLEDGE THE PUBLIC SERVICE TAX REVENUES DERIVED FROM A TAX ON METERED OR BOTTLED GAS PURSUANT TO s 166.231, F.S., TO SECURE A LOAN FOR SEWER SYSTEM IMPROVEMENTS OR REPAIRS?
From supplemental information supplied this office it appears that the City Council of DeFuniak Springs is borrowing money from the Farmers Home Administration for the purpose of improving the city's sewer system, and that the Farmers Home Administration has requested the city council to pledge, among other things, the public service tax revenues derived from the tax levied by the city on the purchase of metered or bottled gas pursuant to s166.231, F.S., as security for the loan giving the Farmers Home Administration a first and prior lien on such exercise tax revenues.
Section 166.231, F.S., as amended by chapters 82-230 and 82-399, Laws of Florida, provides in subsection 1(a)(2):
 A municipality may levy a tax on the purchase of electricity, metered or bottled gas (natural liquefied petroleum gas or manufactured), water service, telephone service, and telegraph service. The tax shall be levied only upon purchases within the municipality and shall not exceed 10 percent of the payments received by the seller of the taxable item from the purchaser for the purchase of such service. . . . (e.s.)
Section 166.231, F.S., as amended, does not prescribe any limitation on the use of public service tax levied by the city on the purchase of metered or bottled gas or any of the other taxable items enumerated in s 166.231(1)(a). Thus, it is only necessary to ascertain if such a pledge of the public service tax revenue is otherwise authorized by law, and if that pledge satisfies the public purpose requirement of the State Constitution. See, s 10, Art. VII, State Const., and Nohrr v. Brevard County Educational Fac. Auth., 247 So.2d 304 (Fla. 1971). Section 166.101(1), F.S., defines the term `bond' to include `bonds, debentures, notes, certificates of indebtedness, . . . or other obligations or evidences of indebtedness of any type or character.' Section166.101(4) defines `revenue bonds' as `obligations of the municipality which are payable from revenues derived from sources other than ad valorem taxes on real or tangible personal property and which do not pledge the property, credit, or general tax revenue of the municipality.' Subsection (8) of s 166.101 defines `project' essentially as a governmental undertaking approved by the governing body which embraces any capital expenditure which the governing body shall deem to be made for a public purpose.
Section 166.111, F.S., specifically authorizes the governing body of a municipality to borrow money, contract loans, and issue bonds as defined in s 166.101 to finance the undertaking of any capital or other project for the purposes permitted by the State Constitution, and further provides, inter alia, that the funds of the municipality may be pledged for payment of such debts and bonds. Section 166.141, F.S., provides that Part III of Ch. 166 (ss 166.101-166.141, F.S.) `shall be full authority for the issuance of bonds authorized herein.' The requirement set forth in s 12, Art. VIII, State Const., for voter approval of bonds and certificates of indebtedness payable from ad valorem taxation does not appear applicable to the project described in your letter since no ad valorem taxes will be pledged. See, e.g., State v. City of Miami, 379 So.2d 651 (Fla. 1980); State v. City of Sunrise, 354 So.2d 1206 (Fla. 1978); State v. Alachua County,335 So.2d 554 (Fla. 1976); Welker v. State, 93 So.2d 591 (Fla. 1957); State v. City of Miami, 76 So.2d 294 (Fla. 1954); State v. City of Miami, 62 So.2d 407 (Fla. 1953).
In regard to the public purpose requirement, projects relating to the repair or improvement of municipal works, such as a municipal sewer system, have been identified by the courts as constituting a municipal or public purpose and the courts have recognized the authority of a municipality to pledge utility taxes and other excise taxes such as franchise taxes as security for revenue bond issues. E.g., Welker v. State, 93 So.2d 591 (Fla. 1957); Miller v. City of St. Augustine, 97 So.2d 256 (Fla. 1957); State v. City of Miami, 76 So.2d 294 (Fla. 1954); State v. City of Miami,62 So.2d 407 (Fla. 1953); Schmeller v. City of Fort Lauderdale, 38 So.2d 36
(Fla. 1948).
In light of the above authorities, I must conclude that Ch. 166, Part III, authorizes the pledge of the above-described public service tax revenues to secure obligations issued to finance improvements or repairs of your municipal sewer system, and that such use of these revenues is not contrary to $10, Art. VII, State Constitution.
In summary, I am of the opinion that the City of DeFuniak Springs may pledge the public service tax revenues derived from the tax levied by the city on the purchase of metered or bottled gas pursuant to s 166.231, F.S., to secure a loan for sewer system improvements or repairs.
Sincerely,
Jim Smith, Attorney General
Prepared by: Anne Curtis Terry, Assistant Attorney General