Mr. Michael J. Stebbins General Counsel for the Santa Rosa Island Authority 504 North Baylen Street Pensacola, Florida 32501
Dear Mr. Stebbins:
On behalf of the Santa Rosa Island Authority, you ask substantially the following question:
Pursuant to Article VII, section 10, Florida Constitution, may the Santa Rosa Island Authority expend public funds to assist a charter school providing educational services within the district by providing funding for the charter school?
In order to supplement the educational opportunities of children, the Florida Legislature in 1996 authorized the creation of charter schools.[1] The statute, now codified at section 1002.33, Florida Statutes, allows for both the creation of new charter schools and the conversion of existing public schools to charter status.[2] Section1002.33, Florida Statutes, provides for the creation of such charter schools as part of the state's program of public education.[3] Your question relates to the authority of a special district, the Santa Rosa Island Authority, to fund such a charter school.
Article VII, section 10, Florida Constitution, prohibits the state or a county, municipality, special district or any agency thereof from lending or using its taxing power or credit to aid any private corporation, association, partnership or person. The purpose of this provision is "to protect public funds and resources from being exploited in assisting or promoting private ventures when the public would be at most only incidentally benefited."[4] Thus, the applicability of the constitutional prohibition contained in Article VII, section 10, is dependent in part on whether a valid public purpose is involved. The determination of what constitutes a valid public purpose for the expenditure of public funds is, at least initially, a determination for the legislative branch of government.[5]
Thus, to the extent a public purpose within the scope of the Santa Rosa Island Authority's grant of power may be accomplished using authority funds, Article VII, section 10, Florida Constitution, would permit such an expenditure. However, as a special district, the authority's express and inherent powers flow directly from its enabling legislation and nothing in that legislation speaks to expenditures for educational purposes.[6]
The Santa Rosa Island Authority was created by Chapter 24500, 1947 Laws of Florida, as a dependent special district of the county.[7] The authority is a board created and appointed by the county commissioners of Escambia County to "use the Island for such purposes as it shall deem to be in the public interests"[8] and has various governmental powers including the power to lease property.[9]
Section 3(a) of the 1947 act provides:
"The County Commissioners are authorized and required to delegate to and vest power and authority in a board hereinafter provided for, to be known as Santa Rosa Island Authority, to exercise, do and perform all of the authority, powers, duties, acts and things herein granted to, vested in, or authorized to be exercised by the County or County Commissioners, which shall include the power and authority herein granted to or vested in said County Commissioners to lease the Island from time to time, in whole or in part or parts; to purchase, construct, extend, improve, own, maintain, insure and operate, either itself or by contract or lease with individuals, firms or corporations, all of the bridges, buildings, structures, facilities, projects, developments, streets, playgrounds, installations, utilities, properties, establishments and things mentioned in this Act; to acquire, sell and dispose of property; to fix and collect tolls, rents, revenues and profits; to advertise the Island; to adopt and enforce building codes and health, sanitation and safety rules and regulations, and regulations generally; and to enter into leases and contracts. The foregoing enumeration of specific powers and authority shall not be held to limit or restrict in any manner the delegation to and vesting in said Authority of all of the authority, powers and duties granted to or vested in said County or County Commissioners by this Act.Provided, however, that any power or authority that cannot be lawfully delegated to and vested in said Authority by the County Commissioners, and the power and authority to issue revenue bonds or certificates and to acquire property by condemnation shall remain exclusively in the County Commissioners and the County Commissioners are authorized and empowered to exercise all such powers and authority."
Thus, the special act authorizes the Santa Rosa Island Authority to exercise the authority of the county with regard to the powers granted by the special act.[10] The act does not, however, vest all the powers and authority of the County Commissioners in the Santa Rosa Island Authority.[11] The authority was created for specific, limited purposes and does not possess the broader home rule powers of the county.[12]
It is a well established rule that special districts have only such powers as are expressly granted to them by law or those necessarily implied because they are essential to carry into effect those powers expressly granted.[13] While it is clear from a reading of the enabling legislation for the authority that the powers granted to it are broad, those powers are limited and no provision of Chapter 24500, 1947 Laws of Florida, or subsequent amendments,[14] authorizes the Santa Rosa Island Authority to fund operational or capital expenses of a charter school or, more generally, to expend funds to accomplish educational purposes.
This office has recognized that a county purpose may be served by the expenditure of county funds for capital improvements to a community college. Attorney General's Opinion 90-78 concluded that a county could propose a millage increase above the 10 mill cap to fund capital outlays by a community college if the county determined that such an expenditure furthered a county purpose. Based on the county's authority to levy a tax under Article VII, section 9, Florida Constitution, and section 125.01, Florida Statutes, the opinion concluded that such an expenditure of county funds would be appropriate.[15]
In a situation similar to the one you present, this office in Attorney General's Opinion 2001-02 considered whether the Holley-Navarre Fire Protection District could levy certain impact fees or whether Santa Rosa County could collect fire protection impact fees and share those fees with the district. While recognizing that the district had statutory authority to charge use and impact fees as authorized by a resolution of the board, the opinion noted that the district's authority to impose impact fees was strictly limited by the statute. The opinion concluded that the district itself could not impose impact fees other than as authorized by statute. However, the county, after a determination that such an expenditure would satisfy a county purpose, could impose an impact fee for fire protection and distribute it to the district under certain conditions. Similarly, in this case, the county would have the authority to contribute to a charter school's operational and capital expenses after a determination that such an expenditure would satisfy a county purpose.
However, unlike counties and municipalities, which have been granted home rule powers, the Santa Rosa Island Authority possesses no inherent or home rule powers. Created by special law for a specific, limited purpose, the authority may exercise only those powers and authority as have been granted by law.[16] In light of the nature of the authority and the specific powers granted by Chapter 24500, 1947 Laws of Florida, as amended, it is my opinion that the Santa Rosa Island Authority, despite its good intentions, has no authority to commit funds to assist a charter school providing educational services within the district.
Sincerely,
Charlie Crist Attorney General
CC/tgh
[1] See s. 1, Ch. 96-186, Laws of Fla.
[2] Section 1002.33(3), Fla. Stat.
[3] Section 1002.33(1), Fla. Stat.
[4] See, e.g., Bannon v. Port of Palm Beach District, 246 So.2d 737,741 (Fla. 1971). Cf., State v. Town of North Miami, 59 So.2d 779 (Fla. 1952); Bailey v. City of Tampa, 111 So. 119 (Fla. 1926).
[5] State v. Housing Finance Authority of Polk County, 376 So.2d 1158,1160 (Fla. 1979). And see, Jackson Lumber Co. v. Walton County, 116 So. 771
(Fla. 1928). Cf., Watson v. Larson, 33 So.2d 155 (Fla. 1947), cert.den., 333 U.S. 862 (1948).
[6] Cf. Straughn v. Camp, 293 So.2d 689 (Fla. 1974), in which the Florida Supreme Court rejected the argument by a group of lessees of the Santa Rosa Island Authority that their leasehold estates (primarily dwellings used as private homes) should be exempt from ad valorem taxes as the leases served a public purpose (development of the island) and therefore were entitled to an exemption under the taxing statutes.
[7] See s. 189.403(2), Fla. Stat., defining the term "[d]ependent special district."
[8] Sections 2(1) and 3, Ch. 24500, 1947 Laws of Florida.
[9] See s. 2(3), id.
[10] And see, s. 1, Ch. 70-680, Laws of Florida, which amended s. 3(a), of Ch. 24500, 1947 Laws of Florida, and required the authority to prepare and develop a comprehensive land use plan.
[11] See Furnams v. Santa Rosa Island Authority, 377 So.2d 983
(Fla. 1st DCA 1979), affirmed 399 So.2d 1142 (Fla. 1981).
[12] See Art. VIII, s. 1(f), Fla. Const., providing non-charter counties with "such power of self-government as is provided by general or special law. The board of county commissioners of a county not operating under a charter may enact, in a manner prescribed by general law, county ordinances not inconsistent with general or special law[;]" and s.125.01(1), Fla. Stat.
[13] See, e.g., Forbes Pioneer Boat Line v. Board of Commissioners ofEverglades Drainage District, 82 So. 346 (Fla. 1919); Op. Att'y Gen. Fla. 89-34 (1989).
[14] See Ch. 24500, 1947 Laws of Florida, as amended by Ch. 26422, 1949 Laws of Florida, Chs. 63-1322, 79-457, 83-407, and 84-426, Laws of Florida.
[15] And see Op. Att'y Gen. Fla. 83-05 (1983) (under proper circumstances and based upon appropriate legislative findings, county commission may exercise its home rule powers to expend county funds to institute an incentive program).
[16] Cf. Ops. Att'y Gen. Fla. 00-69 (2000) (Pal-Mar Water Control district not authorized to waive or forgive unpaid delinquent special assessments levied against property within district); 90-63 (1990) (in absence of statute authorizing recall of supervisor of water control district, landowners of district not authorized to establish procedures for recall of supervisor), and 81-17 (1981) (use of a runoff procedure is unauthorized).